# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **KEITH E. RITCHIE,** | ) | |
| Plaintiff, | ) | Case No. 2:08cv00037 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

The plaintiff, Keith E. Ritchie, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2008). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."

-1-

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Ritchie protectively filed his applications for DIB and SSI on January 20, 2006, alleging disability as of November 14, 2005, due to migraine headaches, thyroid problems, back and leg problems, colitis, anxiety, depression, breathing problems and cholesterol problems. (Record, ("R."), at 42-44, 47, 59, 86, 95.) The claims were denied initially and upon reconsideration. (R. at 32-38.) Ritchie then requested a hearing before an administrative law judge, ("ALJ"). (R. at 31.) The ALJ held a hearing on October 23, 2007, at which Ritchie testified and was represented by counsel. (R. at 335-69.)

By decision dated February 29, 2008, the ALJ denied Ritchie's claims. (R. at 14-22.) The ALJ found that Ritchie met the disability insured status requirements of the Act for DIB purposes through December 31, 2009. (R. at 16.) The ALJ also found that Ritchie had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 16.) The ALJ determined that the medical evidence established that Ritchie suffered from severe impairments, namely hepatitis C, depression and a back disorder; however, she found that Ritchie did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) In addition, the ALJ found that Ritchie had the residual functional capacity to perform a limited range of light work[1] in a temperature-

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2008).

controlled environment. (R. at 18.) Specifically, the ALJ found that Ritchie was limited to simple, noncomplex tasks that did not involve working with the public or close interaction with co-workers. (R. at 18.) Thus, the ALJ found that Ritchie was unable to perform any of his past relevant work. (R. at 20.) Based upon Ritchie's age, education, work experience and residual functional capacity, as well as the testimony of a vocational expert, the ALJ determined that there were jobs existing in significant numbers in the national economy that he could perform, including those of a laundry worker, a laundry folder and a small parts assembler. (R. at 21-22.) Therefore, the ALJ concluded that Ritchie was not under a disability as defined in the Act and was not entitled to DIB or SSI benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2008).

After the ALJ issued her decision, Ritchie pursued his administrative appeals, (R. at 10), but the Appeals Council denied his request for review. (R. at 6-9.) Ritchie then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2008). This case is before the court on Ritchie's motion for summary judgment, which was filed January 21, 2009, and on the Commissioner's motion for summary judgment, which was filed on February 10, 2009.

## II. Facts

Ritchie was born in 1962, (R. at 42), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Ritchie has a high school education, one year of college education and vocational training in electrical work. (R. at 64-65.) He has past work experience as a corrections officer, a roof bolter and in housekeeping.

(R. at 51, 117.)

James Williams, a vocational expert, was present and testified at Ritchie's hearing. (R. at 360-67.) Williams identified Ritchie's past work as a roof bolter and a corrections officer as semi-skilled, medium[2] work. (R. at 360.) He classified Ritchie's work in housekeeping and as a maintenance supervisor as skilled, heavy[3] work. (R. at 360-61.) Williams was asked to consider an individual of Ritchie's age, education and work experience who had the residual functional capacity to perform simple, noncomplex, light work that did not involve working with the public or close interaction with co-workers and which was in a temperature-controlled environment. (R. at 362.) Williams testified that such an individual could not perform Ritchie's past work. (R. at 362.) Williams testified that there were light jobs existing in significant numbers that such an individual could perform, including jobs as a laundry laborer, a cleaner and an assembler. (R. at 363.) When asked if there were jobs available that an individual, who was limited as indicated by Dr. Uzma Ehtesham, M.D., Williams stated that there would be no jobs available that such an individual could perform. (R. at 296-98, 314-16, 364.)

In rendering her decision, the ALJ reviewed medical records from Village Pharmacy; Holston Valley Medical Center; Julie Jennings, Ph.D., a state agency psychologist; Howard Leizer, Ph.D., a state agency psychologist; Dr. Elizabeth

---

[2]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2008).

[3]Heavy work involves lifting items weighing up to 100 pounds at a time with frequent lifting or carrying of items weighing up to 50 pounds. If someone can do heavy work, he also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2008).

-4-

Cooperstein, M.D.; Holston Medical Group; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Dr. Kevin Blackwell, D.O.; Dr. Michael Hartman, M.D., a state agency physician; Dr. Donald Williams, M.D., a state agency physician; Dr. William H. Matthew, M.D., a psychiatrist; Frontier Health; Ralph Ott, L.P.C., a licensed professional counselor; Wellmont Lonesome Pine Hospital; Norton Community Hospital; Dr. Mark M. Taylor, M.D.; and Dr. Uzma Ehtesham, M.D., a psychiatrist.

Ritchie does not contest the ALJ's findings with regard to his physical impairments. Therefore, the undersigned will address only Ritchie's alleged mental impairments.

The record shows that Dr. Elizabeth Cooperstein, M.D., was Ritchie's primary care physician. (R. at 137-60.) In December 2004, Ritchie reported that his symptoms of anxiety had improved with medication. (R. at 143.) He reported that he continued to experience unexpected crying spells and some symptoms of panic. (R. at 143.) Dr. Cooperstein ordered a drug screen, which was positive for methadone. (R. at 154.) When confronted, Ritchie reported that he had taken only one tablet that he received from his sister. (R. at 154.) In February 2005, Ritchie reported that his anxiety had improved. (R. at 142.) In November 2005, an MRI of Ritchie's brain was normal. (R. at 148.) In December 2005, Ritchie reported that he had been unable to function for the previous month. (R. at 139.) He reported dizziness and shortness of breath. (R. at 139.) He reported that he was still taking methadone, but that he used no other drugs. (R. at 139.) Dr. Cooperstein noted that she suspected that Ritchie was using something because he avoided letting her examine his forearm, and her nurse noted scarring in the area when she took his blood pressure. (R. at 139.) Dr. Cooperstein also reported that Ritchie never told her that he was going to a methadone clinic "until it was

impossible to hide." (R. at 139.) In January 2006, Ritchie complained of headaches, swelling of the lower extremities and crying spells. (R. at 137.) He requested pain medication. (R. at 137.) His affect was mildly anxious, and he was in no acute distress. (R. at 137.) Dr. Cooperstein reported that Ritchie had a history of drug-seeking behavior. (R. at 137.)

On February 6, 2006, Dr. Fred A. Merkel, D.O., saw Ritchie for complaints of migraine headaches and panic attacks. (R. at 161-62.) Dr. Merkel reported that Ritchie was very sociable and that he looked relaxed and comfortable. (R. at 162.) Ritchie's pharmacist informed Dr. Merkel's office that Ritchie "sees four to five different doctors" and that he "uses ... and abuses the medication." (R. at 162.) Dr. Merkel's suspicion was heightened when Ritchie had no response to his unease in treating him. (R. at 162.) Dr. Merkel did not examine Ritchie, nor did Ritchie return to Dr. Merkel. (R. at 162.)

In March 2006, Ritchie was seen at Frontier Health and was diagnosed with severe major depressive disorder with psychotic features.[4] (R. at 258.) It was reported that Ritchie had a then-current Global Assessment of Functioning score, ("GAF"), of 45.[5] (R. at 258.) Ritchie was referred for inpatient treatment; however, there is no indication that he sought such treatment. (R. at 258.) In May and July 2007, Ritchie

---

[4]The signature is illegible; thus, it cannot be determined who made this diagnosis. (R. at 258.)

[5]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

-6-

attended three outpatient therapy sessions with Ralph Ott, L.P.C., a licensed professional counselor. (R. at 233-56.) At the initial session, Ott observed a moderately to severely depressed mood and a tearful affect. (R. at 256.) Ritchie had intact attention and thought process and somewhat impoverished thinking. (R. at 256.) Ott diagnosed major depressive disorder and opioid dependence in remission. (R. at 233-53.) He assessed Ritchie's then-current GAF score at 50, with his highest GAF score in the previous six months being 65[6] and his lowest being 50. (R. at 240.) On May 7, 2007, Ott reported that Ritchie's mood was moderately to severely depressed. (R. at 255.) Ritchie had restricted range of affect. (R. at 255.) His attention and thought processes were somewhat impoverished and obsessive. (R. at 255.) In July 2007, Ott reported that Ritchie's mood was moderately depressed with restricted range of affect. (R. at 254.) His attention and memory were within normal limits. (R. at 254.)

On May 26, 2006, B. Wayne Lanthorn, Ph.D., a licensed psychologist, evaluated Ritchie at the request of Disability Determination Services. (R. at 164-70.) Lanthorn reported that Ritchie was able to attend and concentrate. (R. at 166.) His affect was depressed, and he cried throughout the interview. (R. at 167.) Ritchie reported visual hallucinations of seeing Jesus Christ. (R. at 167.) Lanthorn diagnosed opioid dependence and depressive disorder, not otherwise specified, possibly related to withdrawal from pain medication and methadone treatment. (R. at 168.) Lanthorn indicated that Ritchie had a then-current GAF score of 55.[7] (R. at 168.)

---

[6] A GAF score of 61-70 indicates that the individual has "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

[7] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

Lanthorn opined that Ritchie had the ability to understand and remember and to attend and concentrate for short periods. (R. at 168.) He opined that Ritchie "may have" difficulty maintaining routine due to depressive symptoms and frequent crying spells and that he "may have" some difficulty adapting to change and dealing with stress. (R. at 168.) Lanthorn also opined that Ritchie had moderate limitations with general social interaction and adaptation. (R. at 168.)

On October 18, 2007,[8] Lanthorn completed a mental assessment indicating that Ritchie had a limited, but satisfactory, ability to follow work rules, to function independently, to understand, remember and carry out detailed instructions and to maintain personal appearance. (R. at 311-13.) He indicated that Ritchie had a seriously limited, but not precluded, ability to relate to co-workers, to use judgment, to interact with supervisors, to understand, remember and carry out complex instructions and to relate predictably in social situations. (R. at 311-12.) Lanthorn also found that Ritchie had no useful ability to deal with the public, to deal with work stresses, to maintain attention and concentration and to behave in an emotionally stable manner. (R. at 311-12.)

On June 14, 2006, Julie Jennings, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Ritchie suffered from an affective disorder, an anxiety disorder and a substance addiction disorder. (R. at 171-83.) Jennings found that Ritchie was moderately limited in his activities of daily living, in his ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 181.) Jennings also indicated that Ritchie had not experienced any episodes of decompensation. (R. at 181.) Howard Leizer, Ph.D.,

---

[8]It appears that Lanthorn saw Ritchie on only one occasion, May 26, 2006.

another state agency psychologist, affirmed this decision on February 7, 2007. (R. at 200-13.)

Jennings also completed a mental assessment indicating that Ritchie was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public and to set realistic goals or make plans independently of others. (R. at 184-85.) Jennings also reported that Ritchie was able to meet the basic mental demands of competitive work on a sustained basis despite these limitations. (R. at 186.)

On July 26, 2006, Dr. Kevin Blackwell, D.O., saw Ritchie for his complaints of migraine headaches, back pain, swelling of his lower extremities, depression and anxiety. (R. at 187-90.) Dr. Blackwell reported that Ritchie did not appear to be in any acute distress. (R. at 189.) Ritchie was alert, cooperative and oriented with good mental status. (R. at 189.) He had a symmetric and balanced gait. (R. at 189.) Dr. Blackwell diagnosed chronic low back pain, hypertension and history of migraine headaches. (R. at 189.) He reported that Ritchie could occasionally lift and carry items weighing up to 40 pounds and frequently lift and carry items weighing up to 20 pounds. (R. at 190.) Dr. Blackwell opined that Ritchie had a limited ability to bend, to squat, to kneel and to crawl. (R. at 190.)

In February 2007, Dr. William H. Matthew, M.D., a psychiatrist, saw Ritchie for his complaints of poor concentration and memory. (R. at 230.) Dr. Matthew reported that Ritchie appeared depressed and anxious. (R. at 230.) In March 2007, Ritchie reported that his emotional state was stable. (R. at 231.) However, he reported an increase in crying spells and panic attacks. (R. at 232.) Ritchie denied any delusions or hallucinations. (R. at 231.) Dr. Matthew diagnosed major depressive disorder and generalized anxiety disorder. (R. at 232.) In June 2007, Ritchie reported that his medications were not helping. (R. at 227.) He reported increased symptoms of depression and anxiety. (R. at 227.) Ritchie's mood was anxious and depressed, and his affect was appropriate. (R. at 227.) Ritchie's thought content was intact. (R. at 227.) Dr. Matthew diagnosed major depressive disorder and generalized anxiety disorder. (R. at 228.)

On February 7, 2007, Howard Leizer, Ph.D., a state agency psychologist, completed a mental assessment indicating that Ritchie was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public and to set realistic goals or make plans independently of others. (R. at 214-16.) Leizer also reported that Ritchie was able to meet the basic mental demands of competitive work on a sustained basis despite these limitations. (R. at 216.)

On April 26, 2007, Ritchie visited Dr. Mark M. Taylor, M.D., for the first time and requested that Dr. Taylor complete two disability forms indicating that he was disabled due to back problems and "nerves." (R. at 289-90.) Dr. Taylor declined to complete these forms because he had no access to Ritchie's mental health treatment notes. (R. at 289.) Dr. Taylor reported that he had reviewed Ritchie's MRI study of his back, which showed only mild degenerative changes. (R. at 289.) Dr. Taylor stated that "this in no way amounts to [a] significant enough problem to base disability on." (R. at 289.) Dr. Taylor reported that Ritchie could sit, stand, walk and rise from a sitting to standing position without limitations. (R. at 289.) Dr. Taylor reported that Ritchie had nothing more than self-imposed limitations. (R. at 290.) Dr. Taylor stated that he would refer Ritchie for a functional capacity evaluation, but he suspected that Ritchie "would not fully participate in the exam." (R. at 290.)

Between July and September 2007, Ritchie attended semi-monthly sessions with Dr. Uzma Ehtesham, M.D., a psychiatrist, for depression and anxiety. (R. at 299-305, 317-23.) Dr. Ehtesham generally observed a depressed mood and an anxious and restricted affect. (R. at 299-305, 317-23.) Ritchie had intact memory and normal thought processes. (R. at 299-305, 317-23.) By September, Ritchie reported that his depression and anxiety symptoms had improved. (R. at 299, 317.) Dr. Ehtesham diagnosed major depressive disorder and generalized anxiety disorder and assessed a GAF score of 60. (R. at 305, 323.)

Dr. Ehtesham completed a mental assessment indicating that Ritchie had a seriously limited, but not precluded, ability to follow work rules and to maintain personal appearance. (R. at 296-98, 314-16.) Dr. Ehtesham indicated that Ritchie had no useful ability to perform any other work-related activities. (R. at 296-98, 314-16.)

-11-

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2008); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated February 29, 2008, the ALJ denied Ritchie's claims. (R. at 14-22.) The ALJ determined that the medical evidence established that Ritchie

-12-

suffered from severe impairments, namely hepatitis C, depression and a back disorder; however, she found that Ritchie did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) In addition, the ALJ found that Ritchie had the residual functional capacity to perform a limited range of light work in a temperature-controlled environment. (R. at 18.) Specifically, the ALJ found that Ritchie was limited to simple, noncomplex tasks that did not involve working with the public or close interaction with co-workers. (R. at 18.) Thus, the ALJ found that Ritchie was unable to perform any of his past relevant work. (R. at 20.) Based upon Ritchie's age, education, work experience and residual functional capacity, as well as the testimony of a vocational expert, the ALJ determined that there were jobs existing in significant numbers in the national economy that he could perform, including those of a laundry worker, a laundry folder and a small parts assembler. (R. at 21-22.) Therefore, the ALJ concluded that Ritchie was not under a disability as defined in the Act and was not entitled to DIB or SSI benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Ritchie argues that the ALJ erred by failing to adhere to the treating physician rule and accord controlling weight to the opinion of Dr. Ehtesham. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-8.) Ritchie also argues that the ALJ erred by failing to give full consideration to the findings of Lanthorn, who assessed Ritchie's mental impairments and their impact on his ability to work. (Plaintiff's Brief at 8-10.) Ritchie further argues that the ALJ failed to address all the evidence in the record and indicate the weight given to such, including his GAF scores. (Plaintiff's Brief at 10-11.) Ritchie does not challenge the ALJ's finding as to his physical impairments or his physical residual functional

-13-

capacity.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks the authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Specifically, the ALJ must indicate that he has weighed all relevant evidence and must indicate the weight given to this evidence. *See Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979.) Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

The court will first address Ritchie's contention that the ALJ erred by failing to accord proper weight to the opinions of Dr. Ehtesham and Lanthorn. (Plaintiff's

-14-

Brief at 6-10.) After a review of the evidence of record, I find Ritchie's argument unpersuasive.

The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Based on my review of the record, I find that substantial evidence exists to support the ALJ's decision to not give controlling weight to the opinions of Dr. Ehtesham and Lanthorn. The ALJ rejected Dr. Ehtesham's assessment because it was inconsistent with her own treatment notes, including the assessment of a GAF score of 60, as well as her choice of treatment. (R. at 20.) The ALJ also rejected Lanthorn's assessment because it was based on subjective findings from a one-time evaluation. (R. at 20.) The ALJ also noted that the assessments of Dr. Ehtesham and Lanthorn were not supported by the totality of the evidence. (R. at 20.)

The ALJ also noted that the treatment notes were unremarkable and inconsistent

with a disabling mental impairment. (R. at 20, 163-70, 226-56, 299-305.) Treatment notes indicate that Ritchie had intact memory, fair abstract abilities and normal thought processes. (R. at 166, 256, 299-305.) In fact, these notes indicate that Ritchie's symptoms of anxiety and depression improved with medication. (R. at 142-43, 231, 299, 317.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Instead, the ALJ relied upon the opinions of the state agency psychologists, who found that Ritchie was capable of meeting the basic demands of competitive work on a sustained basis despite his mental impairments. (R. at 20, 186, 216.) Based on this, I find that substantial evidence exists to support the ALJ's weighing of the psychological evidence.

Ritchie also argues that the ALJ failed to address all the evidence in the record and indicate the weight given to such, including his GAF scores. (Plaintiff's Brief at 10-11.) In particular, Ritchie argues that the ALJ erred by not considering an April 2006 GAF score from Dr. Pitone[9] and a November 2006 GAF score from Dr. Matthew. (Plaintiff's Brief at 10-11.) Based on my review of the record, I find that this argument is without merit.

There is no GAF score from Dr. Matthew in the record. (R. at 227-32.) Because the record does not contain any GAF score from Dr. Matthew, the ALJ obviously could not consider such. Based on my review of the ALJ's decision, the ALJ cited the treatment notes that contained the GAF score of 45 from Frontier Health. (R. at 19-

---

[9]The signature contained on this medical report is illegible; thus, it cannot be determined who made this assessment. (R. at 258.)

20.) While Ritchie suggests that this GAF score was assessed in April 2006, (Plaintiff's Brief at 10), the record shows that this GAF score was assessed in March 2006. (R. at 258.) The ALJ noted that Ritchie initially "sought mental health treatment in March 2006 and was referred for inpatient treatment at that time." (R. at 19.) Thus, the ALJ was aware of Ritchie's treatment at the time this GAF score was assessed. The ALJ noted that Ritchie never received inpatient treatment and that his symptoms improved with treatment. (R. at 19-20.) With treatment, Ritchie's GAF scores showed only mild to moderate symptoms. (R. at 168, 240, 305.) In fact, in May 2006, just two months after Ritchie's GAF score was assessed at 45, Lanthorn assessed Ritchie's GAF score at 55. (R. at 168.) Lanthorn reported that Ritchie's depression could possibly be related to withdrawal from pain medication and methadone treatment. (R. at 169.) Furthermore, Dr. Blackwell reported in July 2006 that Ritchie had a "good mental status." (R. at 189.) In September 2007, Dr. Ehtesham assessed a GAF score of 60. (R. at 305, 323.)

Based on my review of the record, and for the above-stated reasons, I find that substantial evidence exists in the record to support the ALJ's findings as to Ritchie's residual functional capacity. I recommend that the court deny Ritchie's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the Commissioner's finding as to Ritchie's residual functional capacity; and

2. Substantial evidence exists in the record to support the Commissioner's finding that Ritchie was not disabled.

## RECOMMENDED DISPOSITION

The undersigned recommends that this court deny Ritchie's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.
>
> Failure to file written objections to these proposed findings and

recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in the matter to the Honorable James P. Jones, Chief United States District Judge.

The clerk is directed to send copies of this Report and Recommendation to all counsel of record.

**DATED:** This 3rd day of June 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE